This opinion was filed for record
at 8:00 AM on Sept. 25, 2014

Ronald R. Carpenter
Supreme Court Clerk

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **SEP 2 5 2014**

*Madsen, C.J.*
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 85306-1 |
| Respondent, | EN BANC |
| v. | |
| ANTHONY DAVID KOSS, | Filed __SEP 2 5 2014__ |
| Petitioner. | |

GORDON McCLOUD, J.—This is a case about precedent. Anthony Koss was convicted of first degree burglary. Before jury deliberations, the judge and counsel met in chambers. There is no transcript of the in-chambers proceeding, no reconstructed record, and no agreed summary of what occurred there. Immediately afterwards, however, the judge stated in open court that she had given counsel the jury instructions and had made a requested change in one instruction. Koss therefore infers, and the State agrees (*e.g.*, Br. of Resp't at 10), that it was an in-chambers instructions conference. Koss challenges that procedure for the first time on appeal. As discussed below, recent controlling precedent of this court holds that he can raise

this constitutional claim for the first time on appeal and that the trial court must address several factors on the record before closing a proceeding to which the constitutional right to a public trial attaches. But recent precedent also holds that the constitutional right to a public trial does not extend to such a preliminary instructions conference. We adhere to all of those recent controlling precedents.

Koss also argues that the trial judge received and answered two questions, in writing, during deliberations, in another closed court proceeding. But the transcript, clerk's papers, and docket do not reveal any such proceeding, open or closed. Nor do any declarations, affidavits, or other materials document the existence of a proceeding, open or closed, in which these questions and answers were considered. Recent controlling precedent reaffirms our long-standing rule that the appellant bears the burden of providing a record showing that the supposedly unconstitutional event occurred. We reaffirm that recent controlling precedent.

The Court of Appeals affirmed Koss's conviction. Because we adhere to our recent controlling precedent on all the topics listed above, we affirm the Court of Appeals.

## FACTS

Koss knocked on a stranger's door. When she opened it, he asked if she was having a party. She said no, and Koss then punched her in the face through her

doorway. He was charged with burglary in the first degree. At trial, the defense theory was that another person threw the punch. The jury convicted Koss as charged. The Court of Appeals affirmed. *State v. Koss,* noted at 157 Wn. App. 1039 (2010).

Koss presented several issues to this court, but we accepted review of only the public trial issue. We therefore focus on the facts relevant to that issue.

Near the end of trial, the judge met with counsel in chambers. There is no transcript of that meeting, and the record does not reveal the length or content of that discussion. When the judge and counsel emerged, however, the following colloquy occurred; it sheds some light on what happened in chambers.

> THE COURT: Go ahead and be seated.
>
> We are back on the record to go over instructions. I gave counsel a copy of the proposed instructions, and we'll go over the one that Mr. Collins asked to change, but does the State have any objections as proposed?
>
> MR. CRUZ: No, Your Honor. Thank you.
>
> THE COURT: Mr. Collins, any objections or exceptions on the instructions?
>
> MR. COLLINS: No, Your Honor.
>
> THE COURT: And for the record, counsel and I met in chambers. The instruction that states a person commits the crime of burglary in the first degree when he or she enters or remains unlawfully in a building with the intent to commit a crime against a person or property therein and if in entering or while in the building or in immediate flight therefrom, that person assaults any person, the Court

did take out the "or an accomplice," which was included originally in that instruction since that fits the facts in this case.

So, Counsel, just for the record, I'm going to go through and tell you how I numbered them so you can know which numbers they are.

2 Verbatim Report of Proceedings (VRP) (Apr. 29, 2009) at 271. This exchange suggests—and the parties agree—that this in-chambers conference was about jury instructions.

Later, during deliberations, the jury submitted two written questions. The first was "Mr. Drake stated that Tony [K]oss was DOC[.] Can we factor that in? And if so what is the meaning?" Clerk's Papers (CP) at 61. The court's response, written on the same page as the question, was "Please re-read your jury instructions." *Id.* The jury's second written inquiry was "Need CD player to play 911 call." CP at 62. The court's response, again written on the same page, was "(given one time— computer playback)." *Id.*

These questions and answers are documented in the clerk's papers, but there is no corresponding transcript, minute entry, or other part of the record that reveals anything further about them. Instead, the transcript shows the following: After receiving the instructions, the jury left the courtroom to begin deliberations. 2 VRP (Apr. 29, 2009) at 346. Immediately thereafter, the court, the defendant, and counsel discussed (in open court) administrative matters such as counsel's phone numbers

and the status of the defendant's bond. *Id.* at 346-47. At the end of that discussion, the court clerk said, "All rise." *Id.* at 347. The transcript then reads, "(COURT IN RECESS.)" *Id.* The very next thing in the transcript is the return of the jury. *Id.* Nothing in the transcript or clerk's papers reveals the procedure by which the court handled the jury questions.

The only challenge to that question-and-answer procedure in the Court of Appeals is violation of the constitutional right to an open courtroom. The only challenge to that procedure in the petition for review is violation of the constitutional right to an open courtroom. That is the issue upon which review was granted. In supplemental briefing thereafter, the petitioner for the first time argues that this procedure also violated his constitutional and court-rule-based right to be present.

ANALYSIS

I.    STANDARD OF REVIEW

The defendant may raise the constitutional right to a public trial for the first time on appeal. *State v. Wise,* 176 Wn.2d 1, 9, 288 P.3d 1113 (2012); *State v. Brightman,* 155 Wn.2d 506, 517–18, 122 P.3d 150 (2005) ("defendant's failure to lodge a contemporaneous objection at trial did not effect a waiver of the public trial right" (citing *State v. Bone-Club,* 128 Wn.2d 254, 257, 906 P.2d 325 (1995))). We

review a claim that the trial court violated the constitutional right to a public trial de novo. *State v. Easterling*, 157 Wn.2d 167, 173–74, 137 P.3d 825 (2006).

II. IN *SUBLETT*, THIS COURT HELD THAT A DEFENDANT'S CONSTITUTIONAL RIGHT TO A PUBLIC TRIAL DOES NOT ATTACH TO A PRELIMINARY JURY INSTRUCTION CONFERENCE WITH COUNSEL; THAT HOLDING CONTROLS KOSS'S FIRST CLAIM

"[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980) (Brennan, J., concurring) (public trial presumption not incompatible with private exchanges at the bench and conferences in chambers). Thus, before examining whether a violation occurred, we first consider whether the proceeding at issue was one to which the constitutional right to a public trial attaches. *Sublett*, 176 Wn.2d at 71.

We recently adopted the federal experience and logic test as a "useful tool for determining whether the public trial right attaches to a particular process." *Id.* at 75. In *Sublett*, we applied that experience and logic test to a discussion of jury questions

in chambers *during* deliberations. The *Sublett* court held that such a procedure "did not implicate the public trial right."[1]

That is a slightly different issue than the first issue raised by Koss, that is, discussion of jury instructions *prior to* deliberations. In reaching its holding, however, *Sublett* relies by way of analogy on the rules for discussing jury instructions *prior to* deliberations. *Id.* ("we view this as similar in nature to proceedings regarding jury instructions in general"). With regard to such preliminary in-chambers instructions conferences, like the first violation claimed here, we stated:

> We are aware that, quite often, counsel discuss the instructions with the court during an informal proceeding. But before instructing the jury, counsel is to be given the opportunity to object in the absence of the jury. CrR 6.15(c). Any objections to the instructions, as well as the grounds for the objections, must be put in the record to preserve review. . . . We have found no challenges to . . . the rule or, prior to the rule's enactment, any case requiring the discussion of jury instructions to be held in open court.

*Id.* at 75-76. We then applied that reasoning to the slightly different challenged procedure in *Sublett*—jury questions asked *during* deliberations—and concluded

---

[1] *Sublett*, 176 Wn.2d at 77; *see also id.* at 99-100 (Madsen, C.J., concurring) ("I agree with the court's decision in *Sublett* that the right to a public trial is not implicated when, in chambers and with counsel present, the trial judge considers a question submitted by the jury during the course of its deliberations."), 142 (Stephens, J., concurring) ("I agree that the procedure followed by the trial court in this case was consistent with . . . the public trial right.").

that because "[t]he same is true regarding a proceeding to discuss a question from the jury about its instructions," that latter proceeding did not implicate the constitutional public trial right, either. *Id.* at 76, 77. Justice Stephens concurred in *Sublett* for the same reason, stating that "the answer to this question should be the same for a hearing responding to a jury question about the instructions as for a hearing addressing jury instructions in the first instance." *Id.* at 141 (Stephens, J., concurring). Her concurrence states that if the public trial right is not offended by holding an in-chambers conference to discuss jury instructions before returning to the courtroom to put matters on the record, then it is not offended when the judge considers a question from a deliberating jury with counsel in chambers before entering the matter in the record. *Id.*[2] The justices' shared view that the defendant's constitutional right to an open court does not attach to preliminary in-chambers jury instruction conferences thus seems necessary to the *Sublett* court's final holding.

We therefore apply *Sublett*'s discussion of jury instruction conferences to this case. As discussed above, the judge and counsel discussed instructions informally in chambers, then returned to the courtroom to put any objections formally on the record. Under both the lead opinion and Justice Stephens' concurrence in *Sublett*,

---

[2] The few other courts that have considered this issue agree. *See State v. Womelsdorf*, 47 Kan. App. 2d 307, 274 P.3d 662 (2012); *State v. Swanson*, 112 Haw. 343, 145 P.3d 886 (2006).

-8-

the in-chambers discussion of jury instructions did not violate the constitutional right to a public trial.[3]

> ### III. THE RECORD DOES NOT SHOW THAT THE TRIAL COURT HELD A DISCUSSION OF JURY QUESTIONS IN CHAMBERS AT ALL; KOSS'S FAILURE TO PROVIDE A RECORD SHOWING ANY IN-CHAMBERS PROCEEDING OCCURRED DOOMS HIS SECOND CLAIM

Koss also challenges the trial court's handling of the jury's questions during deliberations. Courtroom closure during such proceedings is precisely what occurred in *Sublett*. Koss argues that there must have been a substantive, closed proceeding to which Koss was not invited but it was just not documented.

He is certainly correct that it was not documented.[4] The record contains only the written questions and answers. It lacks any indication that the judge consulted

---

[3] The only question before us is whether this procedure violated the defendant's *constitutional* right to an open courtroom. We do not address whether such closed court proceedings are good policy given the importance of openness and transparency in judicial proceedings to public confidence in the judiciary and indeed in all of government.

[4] It is true that questions from the jury during deliberations are controlled by CrR 6.15(f)(1), which requires notification of counsel "of the contents of the questions," that counsel have "an opportunity to comment," and that the court respond "in open court or in writing." The lead opinion in *Sublett* states that CrR 6.15(f)(1) "advances and protects those interests underlying the constitutional requirements of open courts with its directive to put the question, answer, and objections in the record." *Sublett*, 176 Wn.2d at 77. Similarly, Justice Stephens' concurrence states that "CrR 6.15(f)(1) seems to implement the constitutional requirement." *Id.* at 141 (Stephens, J., concurring). And Chief Justice Madsen's concurrence agrees that "the right to a public trial is not implicated when, in chambers and with counsel present, the trial judge considers a question submitted by the jury during the course of its deliberations." *Id.* at 99-100 (Madsen, C.J., concurring). Thus, if the judge failed to consult with counsel regarding the jury questions, that would violate CrR 6.15(f)(1). And the statements in the concurrences in *Sublett*, quoted above, suggest that such a deviation from CrR 6.15(f)(1) implicates constitutional protections. But Koss

with counsel regarding the jury questions either privately or publicly. It also lacks any indication that she did not do so. The report of proceedings shows only that the jury exited, that a short discussion occurred in the courtroom irrelevant to the issue before us, and that the jury returned with its verdict. 2 VRP (Apr. 29, 2009) at 346-47. The trial minutes show only that the defense rested its case at 10:37 a.m., and the jury returned with its verdict at 2:35 p.m. CP at 71. Neither party reconstructed the relevant portions of the record, as is permitted under RAP 9.3 (permitting the party seeking review to prepare a narrative report of proceedings), RAP 9.4 (permitting the parties to prepare an agreed-upon report of proceedings), RAP 9.9 (permitting the parties to correct or supplement the report of proceedings before transmittal to the appellate court), and RAP 9.10 (permitting such correction of the record even after transmittal to the appellate court). Koss therefore hangs his entire argument regarding the jury questions on the *lack* of a record; he argues, "The record has no information of whether the defendant or counsel were contacted or consulted regarding the court[']s response to the jury." Suppl. Br. of Pet'r at 7. Koss claims that because the record does not reveal whether the judge discussed the questions with counsel, we must assume that the judge did not do so.[5]

---

did not raise a CrR 6.15 violation in the Court of Appeals or in his petition for review. Moreover, the record is silent as to whether any such deviation from the rule occurred.

[5] Koss also asserts that the record does not reveal whether Koss was present, and so we must assume that he was not and that his right to presence was therefore violated. We

Manifest errors affecting a constitutional right may be raised for the first time on appeal. RAP 2.5(a)(3). We have clearly held that a courtroom closure that implicates the public trial right can constitute such a manifest error. *State v. Paumier*, 176 Wn.2d 29, 36, 288 P.3d 1126 (2012).

But it is also well established that to raise a claim for the first time on appeal, "the trial record must be sufficient to determine the merits of the claim." *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (citing *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)); *see also State v. Jasper*, 174 Wn.2d 96, 123-24, 271 P.3d 876 (2012) (quoting *Barker v. Weeks*, 182 Wash. 384, 391, 47 P.2d 1 (1935) (quoting 4 C.J. *Appeal and Error* § 2666, at 736 (1916)). Otherwise the error is not "manifest." RAP 2.5(a)(3); *see also State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993) (error not manifest "where the facts necessary for its adjudication are not in the record"); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).[6]

---

accepted review only of the public trial issue, however. That was entirely appropriate, because Koss did not raise the denial of his right to presence in the Court of Appeals or in his petition for review.

[6] As this court held in its extended discussion of RAP 2.5(a)(3) in *State v. WWJ Corp.*, there are two components to manifest error. *State v. WWJ Corp.*, 138 Wn.2d 595, 602-03, 980 P.2d 1257 (1999). An error is manifest "only if it results in a concrete detriment to the claimant's constitutional rights, *and* the claimed error rests upon a plausible argument that is supported by the record." *Id.* at 603 (citing *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)). We have sometimes referred to the requirement

It remains true that the trial court, not the defendant, is responsible for making a record that the proper procedures were followed before closing a court proceeding to which the right to an open trial attaches. *Bone-Club*, 128 Wn.2d at 258–59 (citing *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 36-39, 640 P.2d 716 (1982)). But the appellant bears the responsibility to provide a record showing that such a closure occurred in the first place.

If appellate counsel believes such an error occurred but the record does not prove it, the appellant still has options. If the court reporter's notes or the videotape of the proceedings are damaged or lost, a party may prepare a narrative report of proceedings, which should be a "fair and accurate statement of the occurrences in . . . the trial court material to the issues on review." RAP 9.3. The parties may "prepare and sign an agreed report of proceedings setting forth only so many of the facts averred and proved or sought to be proved as are essential to the decision of the issues presented for review." RAP 9.4. A party may also rely on RAP 9.9, which permits correction or supplementation of the report of proceedings before transmittal

---

to show a "concrete detriment to the claimant's constitutional rights" as a requirement to show "actual prejudice." *WWJ Corp.*, 138 Wn.2d at 602-03. But this court recently held that because a public trial violation is structural error, an appellant need not show prejudice to the outcome of the trial to satisfy RAP 2.5(a)(3)'s prerequisites to raising courtroom closure for the first time on appeal. *Wise*, 176 Wn.2d at 18 n.11; *Paumier*, 176 Wn.2d at 36. But the defendant must still show that the claim is supported by the record. *WWJ Corp.*, 138 Wn.2d at 603.

to the appellate court, "on motion of a party, or on stipulation of the parties." RAP 9.10 permits such supplementation of the record even after transmittal to the appellate court. None of that was done here. Thus, Koss failed to show that a courtroom closure occurred at all during proceedings related to the jury's questions.

CONCLUSION

In *Bone-Club* and many cases since then, e.g., *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004), we have held that the trial court must address several factors on the record before it can close a proceeding to which the constitutional right to a public trial attaches. In *Easterling* and many cases since then, e.g., *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009); *Wise*, 176 Wn.2d 1; *Paumier*, 176 Wn.2d 29, we have held that a criminal defendant can challenge the trial court's failure to comply with the constitutional prerequisites to courtroom closure for the first time on appeal.[7] In *Sublett*, we held that the constitutional right to a public trial does not attach to a preliminary jury instructions conference or to a middeliberations discussion of jury questions. And in *Jasper*, we reaffirmed our long-standing rule that the defendant bears the burden of supplying us with a record

---

[7] In later cases, we said that a defendant could also waive the right to raise courtroom closure on appeal—but we have arguably contradictory precedent on what it takes to make a valid waiver. *Compare Bone-Club*, 128 Wn.2d at 257, *with State v. Momah*, 167 Wn.2d 140, 154-55, 217 P.3d 321 (2009). That issue need not be addressed to resolve this case.

that is sufficient to show that the claimed error occurred. Together, those precedents

resolve this case. The Court of Appeals is affirmed.

_____
Gordon McCloud, J.

WE CONCUR:

_____
Madsen, C.J.

_____
_____
P.T.

_____
_____
Stephens, J.

_____
_____
González, J.

_____
Fairhurst, J.

_____

No. 85306-1

WIGGINS, J. (concurring in result)—I agree with the majority's resolution of this case. However, I write separately because I believe the logic and experience test is harmful and incorrect. *See State v. Smith*, No. 85809-8 (concurrence in result) (Wash. Sept. 25, 2014). Thus, I disagree with the majority's application of the test to find that the public trial right does not attach to in-chambers discussion of jury instructions prior to deliberations. Majority at 7-8.

Under article I, section 10, *every part* of the administration of justice is presumptively open. WASH. CONST. art. I, § 10. Open administration of justice is paramount; "'[a] public trial is a core safeguard in our system of justice.'" *State v. Slert*, No. 87844-7, slip op. at 5 (Wash. Sept. 25, 2014) (quoting *State v. Wise*, 176 Wn.2d 1, 5, 288 P.3d 1113 (2012)). The reason we protect open and public trials is to "ensure that judges and lawyers are accountable for what occurs during trial. It helps remind them to act with decorum and to consider the consequences of their actions." *Smith*, slip op. at 8 (dissent). "Public trials also help foster trust in our judicial system, and they allow members of the public to see justice done in their communities." *Id.*

Unfortunately, applying the logic and experience test has resulted in arbitrary line-drawing that has not necessarily furthered the goals of public trials. For instance, in this case, we hold that the public trial right does not attach to in-chambers conferences to discuss jury questions. *See State v. Sublett*, 176 Wn.2d 58, 292 P.2d 715 (2012).[1] But is this or should this always be the case? A recent law review article understandably asks the following:

> Does the [logic and experience test] permit chambers consideration of all questions from a deliberating jury, such as questions about evidence, or is it limited to questions about the court's instructions? What analytical path is to be used for a different sort of question? What if the court and counsel all have new trials underway and cannot be physically present where the jury is deliberating—can they resolve the issue on the telephone, which has been a frequent practice? By email? What about consideration of questions from the jury during trial? If jurors are permitted to submit proposed questions for witnesses, may counsel and the court confer in chambers to decide which questions should be asked?

Anne L. Ellington & Jeanine Blackett Lutzenhiser, *In Washington State Open Courts Jurisprudence Consists Mainly of Open Questions*, 88 WASH. L. REV. 491, 518 (2013).

The *Sublett* plurality adopted the "logic and experience test" because it allows the trial court "to consider the actual proceeding at issue for what it is, without having to force every situation into predefined factors." *Sublett*, 176 Wn.2d at 73-74 (citing *Press-Enter. Co. v. Superior Court,* 478 U.S. 1, 13-14, 106 S. Ct. 2735, 92 L. Ed.

---

[1] Notably, *Sublett* specifically involved a question from a deliberating jury about already issued instructions. 176 Wn.2d 58. Nonetheless, courts have applied *Sublett*'s holding to a broader range of situations such as in-chambers discussion of proposed jury instructions (*State v. Miller*, 179 Wn. App. 91, 100-01, 316 P.3d 1143 (2014)); a jury's questions about the formulation of jury instructions and a request for clarification on how to proceed when the jury felt it was deadlocked (*State v. Burdett*, 178 Wn. App. 183, 196-97, 313 P.3d 1235 (2013)); and a jury's request for a tape measure and masking tape (*State v. McCarthy*, 178 Wn. App. 90, 97-98, 312 P.3d 1027 (2013)).

(1986)). Ironically, however, the majority has used the test to categorically permit closures in certain types of proceedings without considering the effect that such closures have on the open administration of justice in that particular case.

Accordingly, I would reject the logic and experience test and instead presume all stages of trial are open, which brings us into adherence with the language of article I, section 10 and would advance the benefits of openness and publicity. While there may be areas of constitutional law so complex that confusion is inevitable, the public trial right need not be one of them. We should simply announce that the right attaches to all proceedings; we presume all courts are open unless the trial court conducts the five-step analysis required by *State v. Bone-Club*, 128 Wn.2d 254, 906 P.3d 325 (1995).

I agree with the majority's resolution affirming Koss's conviction but would hold so because Koss failed to object to a closure. In other words, he has failed to establish a record of closure and he has not shown "manifest error affecting a constitutional right." RAP 2.5(a)(3).

I concur in result.

_Wiggins, J._